JOSEPH KRANTZ, APPELLANT, *v.* RIO GRANDE
WESTERN RAILWAY COMPANY, RESPONDENT.[1]

1. RAILWAY CORPORATIONS.—LIABILITY FOR WILFUL AND MALI-
CIOUS ACTS OF SERVANTS.—WHEN RELATION AS PASSENGER
CEASES.—When a person leaves a railroad station to which he
came as a passenger to engage in his own business, his rela-
tion as passenger ceases and the company is not liable for a
wilful and malicious assault on him on the company's grounds
outside of its station committed afterwards by its agents, since
such acts are not within the general scope of their authority
or employment, provided the company did not suffer or permit
them.

2. 1D.—ID.—DUTY OF COMPANY TO PROTECT PERSONS WAITING IN
ITS STATION HOUSES FROM ASSAULT.—In an action against a
railroad company, it appeared that plaintiff, a traveling mer-
chant, came as a passenger to one of defendant's stations
situated in a sparsely settled country; that the only means of
transportation to and from such station was by rail; that
plaintiff after being assaulted outside of the station by the
section foreman started to walk along the track to the next
station when he was overtaken and robbed by other persons;
whereupon, he then returned to the former station where he
was again assaulted by such foreman and by the men who
assaulted him on the track; that the station agent, to whose
orders such foreman was subject was present but made no
earnest effort to protect him. *Held*, that the company was
liable for the last assault, since the company itself was present
in the person of the ticket agent in charge, its vice-principal,
and the injuries inflicted in the presence of the vice-principal,
who failed to exercise his authority for the protection of the
plaintiff, were inflicted by the company itself.

---

[1] Petition for a re hearing denied Dec. 9th, 1895. Upon filing
the remittitur in the lower court, judgment was entered pursuant
to the mandate in this opinion. From this judgment defendant
appealed, which was, upon motion of plaintiff, dismissed Jan.
30th, 1896. For opinion, see: 43 Pac. Rep. ——; 13 Utah, ——.

3. CHARGE TO JURY.—MISDIRECTION AS TO THE LAW.—SUBMISSION
OF CAUSE BY COURT TO JURY ON WRONG THEORY.—VERDICT.
—NEW TRIAL.—WHEN ERROR TO GRANT.—Where the court
misdirects the jury as to the law and submits the cause to
them upon a wrong theory, which they disregard and find a
verdict supported by the evidence, the order of the court
setting aside the verdict and granting a new trial will be
reversed, since the order was granted because in the opinion
of the court the verdict was contrary to law and not because
of any conflict in the evidence.

, (No. 552. Decided Aug. 31, 1895. 41 P. R. 717.)

APPEAL from the District Court of the Third Judicial
District. Hon. S. A. Merritt, *Judge.*

Action by Joseph Krantz against the Rio Grande Western
Railway Company for damages for a wilful and malicious
assault committed by defendant's servants. The court with-
drew the issues from the jury upon the first count and
directed a verdict for defendant. From a judgment entered
upon the verdict and from the order overruling plaintiff's
motion for a new trial, he appeals. *Affirmed.* There was
a verdict for plaintiff on the second count and from the
order setting it aside and granting a new trial, plaintiff
appeals. *Reversed.*

*Mr. E. W. Taylor* and *Mr. C. S. Varian,* for appellant.

FIRST APPEAL.

The court erred in withdrawing the issues from the jury
and directing a verdict for defendant. We affirm the fol-
lowing propositions: *First.* Appellant was a passenger
when assaulted. *Second.* In any event, the question was
for the jury. The case was tried by the court upon an
erroneous and utterly inadmissible theory as to when the
relation of passenger begins and when it ends. This ruling
was that in order to institute the relation the person must

either pay fare or tender it, and his fare or offer, must be accepted by the carrier. This appears by his charge.

It is not necessary that the contract for passage should be actually made or the fare actually paid, nor that a person should be on the train to create the relation. If he is on the premises of the carrier, or in a vehicle under its control going to the station. with the *bona fide* intent to become a passenger, the carrier owes to him a duty as such. 2 Woods' Ry. Law, pp. 1037 *et seq.* 1045–1046; Thompson on Carriers (1 ed.), p. 43; Hutchinson on Carriers, 557*a*, 565; Pierce on Rwys. 275; *Hamilton* v. *R. R. Co.,* 21 Am. & E. R. R. Cases, 338; *Gordon* v. *R. R. Co.,* 40 Barb. 546; *Cleveland* v. *Steamboat Co.,* 68 N. Y. 306; *Hunt* v. *R. R. Co.,* 40 Miss. 391; *Allender* v. *R. R. Co.,* 37 Ia. 270; *Harris* v. *Stevens,* 31 Vt. 79; S. C. 73 Am. Dec. 340; *Grimes* v. *R. R. Co.,* 36 Fed. Rep. 72; *Brien* v. *Bennett,* 8 Car. & P. 724; *Buffett* v. *Troy & Boston Co.,* 40 N. Y. 171; *Norfolk Ry. Co.* v. *Galigher,* 16 S. E. 935; *Langman* v. *Great Western Co.,* 115 E. C. Law, 185. The same principle must apply to the ending of the journey. "A passenger arriving at the station continues to be a passenger for a reasonable time until he has left the premises. So, too, a person *bona fide* at the station for the purpose of taking passage upon a train is a passenger, although he has not in fact purchased a ticket." 2 Wood's Ry. Law, 1163; *Waller* v. *M. K. T. Ry. Co.,* 59 Mo. App. 411; 2 Rap. & Mack's Dig. Rw. Laws, 310, 311 and cases; *Shelly* v. *Billings,* 8 Bush. 147; *Winnigais Admrs.* v. *Ry. Co.,* 85 Ky. 552.

The series of acts, from the getting off the train until appellant was driven away, were so connected as to make them practically one transaction, and it should have been left to the jury to say whether a reasonable time had elapsed for the appellant to lose his rights as a passenger purely, and whether the beatings and driving away were

acquiesced or participated in directly or indirectly by the respondent, through its vice-principal.   The respondent is liable to a passenger—or one intending in good faith to become such—absolutely for the acts of its own servants, and relatively for those of strangers.   Appellant told the agent he wished to take a train.   2 Wood's Ry. Law, 119; Thompson Carriers, p. 363–4; *Craker* v. *Ry. Co.*, 36 Wis. 657–673; *Wright* v. *Ry. Co.* (Colo.), 35 Pac. 197; *Goddard* v. *G. Trunk Ry. Co.*, 57 Me. 202; *Norfolk Ry. Co.* v. *Galigher*, *supra*; *R. R. Co.* v. *Darling*, 33 N. E. 636; *Stewart* v. *R. R. Co.*, 90 N. Y. 590; *Hansen* v. *R. R. Co.*, 62 Me. 84; *Fick* v. *R. R. Co.*, 34 A. & E. R. R. Cases, 378 and note, with cases cited on p. 381; *R. R. Co.* v. *Jopes*, 142 U. S. 26–27.   The company had delegated its powers over the premises to the station agent, and is held to be present in his person.   *Com.* v. *Powers*, 7 Metc. 601; 1 Wood Ry. Law, 450.   The duty of the agent was plain. He should have led the way in protecting appellant.   At least he should have made an earnest endeavor to do so, bringing all of the authority with which he was clothed into action.   *Penn. R. R. Co.* v. *Hinds*, 53 Pa. St. 503; *R. R. Co.* v. *Burke*, 53 Miss. 227.

SECOND APPEAL.

Whether in strictness plaintiff was a passenger or not is unimportant.   He entered the premises for the purpose of taking the train, as his own evidence reinforced by attendant circumstances clearly establishes and the jury so found.   Respondent insists that the injuries were inflicted by the persons not acting as agents of the company, nor within the scope of any duty owing by them to the company, nor acting under its authority, or by its request, but acting wholly on a private grudge and quarrel.   But the theory of the objection is in violation of principle, and is

not countenanced by the law. The law binds passenger
carriers to absolute protection of passengers against the
wilful and malicious acts of their own servants, and also
of strangers. The distinction seems to be this: When the
liability of the master depends on the sole fact that the
person inflicting the injury was in some business his ser-
vant, if on inquiry it is found that the act was not done
while in the transaction of the master's business, then the
act is not that of the master but of the servant. But this
rule cannot be applied when the master, either by contract
or by reason of imperative duty imposed by law or public
policy, is under obligations to protect the injured person
from the servant's wrongful act as well as his own. In
such case the master is liable—at least, to make actual
compensation—as though the act was his own personal act.

The distinction is clearly expressed in *Dillingham* v.
*Russell,* 73 Tex. 47; S. C. 15 Am. St. Rep. 757; Thomp-
son Carriers, pp. 368–9. And the supreme court approves
the distinction, saying:  "But owing to the peculiar cir-
cumstances which surround the carrying of passengers   *
*    *    a more stringent rule of liability has been cast
upon the employer; and he has been held liable, although
the assault was wanton and wilful and outside the scope
of the employment." *R. R. Co.* v. *Jopes,* 142 U. S. 27;
*Goddard* v. *G. Trunk,* 57 Me. 202; *Eades* v. *Ry. Co.,* 43
N. Y. App. 545; *Smith* v. *Ry. Co.,* 18 N. Y. Supp. 759.
As to the connection of the tramps with the trespass, we
again point to the fact that the servant of the respondent
was the moving spirit, and that the entire wrong was
perpetrated in the very presence and under the eye of the
company, standing there in the person of its vice-principal.
Certain it is that the new trial was not granted upon these
assignments, and we may dismiss their consideration with
the pertinent inquiry, "If the test of the master's liabil-
ity is in the question of the servant's act being within the

scope of his employment, could a passenger carrier ever be held for its servant's wilful assault on a passenger?" Its servants are never employed to beat or kill passengers. The position of counsel then is, that having permitted the servant of the company acting with strangers, to force appellant into a situation whereby he lost his money, upon his return to renew his claim for protection and transportation, respondent owed him no duty. We fail to see why the rule as to gratuitous passengers would not apply in all its force to this case, even upon the assumption that appellant had no money. Hutchinson on Carriers, § 566; *R. R. Co.* v. *Derby,* 14 How. 468; *Rogers* v. *Kennebec Co.* (Me.), 29 Atl. 1070-1.

*Messrs. Bennett, Marshall & Bradley,* for respondent.

### FIRST APPEAL.

The duty of railway companies to persons who come to their stations as passengers is two-fold: (*a*) As the owners of fixed property to guard persons thereon at their invitation from pitfalls and concealed dangers. This duty is not peculiar to common carriers. (*b*) To care for the safety of persons who as passengers have surrendered the control of their actions to the carrier. 2 Wood on Railways, § 298 (2d ed.) The relation of carrier and passenger ends when the journey contracted for is completed and the passenger has either left the railway station premises or been afforded a sufficient time to so leave. Patterson on Rwy. Acc'nt Law, § 221; *Imhoff* v. *C. & M. R. R.,* 20 Wis. 344. But if instead of leaving or attempting to leave the claimed passenger resumes control of his own person, stays on the premises of the railway for his own purposes; goes to a portion of the premises clearly not intended for him, and that not in an effort to leave the premises, but with the expressed intent to there vend his

wares, he has severed the relation that bound them and ceased to be a passenger. The duty to protect is correlative to the power to control. No authority has been cited, none we believe, can be found, that would justify the contention that plaintiff was a passenger at the time of the assault complained of. Many authorities oppose it. *Heinlein* v. *Boston & Prov. Ry. Co.*, 147 Mass. 136–9; *June* v. *Ry. Co.*, 153 Mass. 79; *Buckley* v. *Old Colony R. R.*, 161 Mass. 27; *Allerton* v. *Ry. Co.*, 34 A. & E. Ry. Cases, 563. *Ry. Co.* v. *Krouse*, 30 Ohio St. 222; *Platt* v. *Ry. Co.*, 2 Hun, 124; *Central Ry. Co.* v. *Peacock*, 9 Am. St. R. 425, 69 Md. 257. If the plaintiff was not then a passenger it needs no argument to support the proposition that the defendant is not liable for the act of the section foreman. Cooley on Torts, pp. 625–627; Patterson Ry. Acc'dnt Law, 117 *et. seq.*

SECOND APPEAL.

The second appeal presents a different question in one of its aspects. The defendant moved for a new trial on the ground (*a*) That the evidence was insufficient to justify the verdict. (*b*) Errors at law occurring at the trial and excepted to by defendant. The order of the court granting a new trial recites as a reason therefor that "It appearing to the court that the said judgment and verdict are not fully supported by the law and *evidence*," the motion is sustained. Counsels for appellant recite in their brief a portion of the plaintiff's testimony as the evidence of the case, but even they cannot well claim that the great, the overwhelming weight of the evidence was not against the plaintiff's statement. All the plaintiff can claim is a conflict of evidence. The plaintiff is then met by the rule that a motion for a new trial on the first ground is addressed to the discretion of the trial court. That court seeing the witnesses, observing their demeanor,

may grant a new trial even if the evidence be conflicting and the supreme court for that reason would not have disturbed the verdict. In Hayne on New Trial and Appeal, § 288, it is said that "Where there is a substantial conflict in the evidence the supreme court will not disturb the decision of the court below. This rule has been announced more frequently than any other rule of practice. It applies equally where the court below granted as where it denied the motion for a new trial." *Downey* v. *Hellman,* 58 Cal. 62; *Bronner* v. *Wetzlar,* 55 Cal. 420; *Brutz* v. *Jessup,* 54 Cal. 118; *Green* v. *L. S. & P. F. Co.,* 46 Cal. 408; *Hawkins* v. *Richert,* 28 Cal. 539; *Edwards* v. *Carson Water Co.,* 21 Nev. 469–492; *Newton* v. *Brown,* 2 Utah, 126; *Davis* v. *Ry. Co.,* 3 Utah, 218–224; *White* v. *Ry. Co.,* 8 Utah, 56.

### WAS THE PLAINTIFF A PASSENGER?

(*a*) If the plaintiff is to be believed, he only applied to defendant to become a passenger when he was in imminent danger of personal violence, and when, if defendant accepted, the defendant would at once have assumed a great responsibility, entirely out of the ordinary. Defendant did not accept. Did the plaintiff, notwithstanding, become a passenger and cast this great responsibility on defendant? It is well settled that an intending passenger cannot insist on being accepted if he presents himself to the carrier under such circumstances of danger to the passenger as to throw unusual obligations on the carrier. *Pearson* v. *Duane,* 4 Wall. 605–615; *Webster* v. *Ry. Co.,* 58 A. & E. Ry. Cas. 1; *Balto. Traction Co.* v. *St.,* 58 A. & E. Ry. Cas. 200–205. (*b*) The evidence shows satisfactorily that the plaintiff had no money. He then could not have in good faith intended to have become a passenger. If he had announced such a wish, and it had been accepted by the company on the faith of his paying, it would have been

a fraud on the company. The relation of passenger and carrier is distinctly a contract relation. There must be a proposal and acceptance. Patterson's Ry. Ac. Law, § 214, 218; *Gardner* v. *Ry. Co.*, 18 A. & E. Ry. Cas. 170 (51 Conn. 143); *Gilmer* v. *Higley*, 110 U. S. 47–49; *Atchinson Ry. Co.* v. *Flinn*, 24 Kan. 629; Hutchinson on Carriers, § 554 (2d ed.). As stated in *Johnson* v. *Ry. Co.*, 8 Am. & Eng. Ry. Cas. 206–209 (58 Ia. 348): "If an agent, conductor, or other employé, should assault a loafer in a waiting room, in a personal quarrel having no relation to his employment, the company would not be liable in damages." The rule of absolute liability for misconduct of the carrier's servants, in respect to a passenger even, is too broadly stated in appellant's brief. That absolute duty only extends to such servants as are charged by the carrier with executing its contract with the passenger and such other servants as may be acting within the scope of their employment. *Steamboat Co.* v. *Brockett*, 121 U. S. 637–645; *Mulligan* v. *Ry. Co.*, 129 N. Y. 506; *Stewart* v. *Ry. Co.*, 90 N. Y. 588.

SMITH, J.:

In this cause, appellant, the plaintiff below, brought suit to recover damages on account of alleged personal injuries inflicted by the respondent's servants. There are two counts in the complaint, and upon the trial a verdict was directed for the respondent, the defendant below, upon the first count, and a verdict returned in favor of the appellant, plaintiff below, in the sum of $4,000 upon the second count. The record discloses the following facts: Upon the 18th of July, 1892, appellant boarded one of the passenger trains of respondent at the station of Sunnyside, in this territory, and paid his fare to the next station, Lower Crossing, where he alighted from the train. Appellant was 51 years of age, and a traveling merchant

by occupation, at the time engaged in traveling over the country, selling spectacles. Lower Crossing is simply a station on the line of railway, and its station house, together with the pump house and section house, were embraced, practically, within one inclosure. There was a platform extending from the station house to the section house, which was but a few yards distant. In alighting from the train, in pursuit of his business, plaintiff went towards the section house, for the purpose, as he says, to sell his wares. Before he reached the house, the section foreman, then in the employment of the company, who, it appears, was under the impression that the appellant was a spotter and spy of the respondent company, without provocation or words, assaulted him with a shovel, and drove him back to the station house, following him. The foreman pulled him out of the station house, and ordered him to leave, saying that he would give him five minutes to get away, and threatening him with death unless he obeyed. The ticket agent was present, and saw the foreman assaulting the appellant outside the station house, and saw them back into the waiting room. Plaintiff, fearing further bodily injury, or worse, started to walk on the track away from the station, and towards Grand Junction, some 30 miles away. He was followed by two unknown persons, designated in the testimony as "tramps," who assaulted and robbed him after he had proceeded about a quarter of a mile upon his journey, taking his satchel, containing his stock in trade, together with his pocketbook, containing a few dollars in money. Thereupon he returned to the station house. The persons who robbed him returned also, and, it appears, located themselves at or near the pump house, which was opposite and across the tracks from the station house.

Upon his return he entered the station and made com-

plaint to the ticket agent of what had happened, and was talking with him about sending telegrams to Green River station, giving information of the robbery. The section foreman interfered, and directed the ticket agent not to send the telegrams, and immediately after crossed the track to where the two tramps were standing, when all three came over to the station, the foreman in advance, and, entering the waiting room, the three assaulted the appellant, brutally beating him. Appellant appealed to the agent and the bystanders for assistance, which was finally rendered by a stranger, the ticket agent making no effort to protect him, other than, as he says, to order them all out of the waiting room. He testifies that he knew the section foreman, for some reason or other, was bent upon injuring the appellant, and that he did not interfere to protect him because he was sick; that he would have had to fight to protect him; that the foreman was subject to his orders in the station house, but would not mind him, because they were at outs; that his authority as station agent would not have been sufficient to protect appellant. Appellant was driven from the station, and walked all night to Price station, a distance of 40 miles, in his sick and disabled condition, where he received attention. The injuries he received were severe and permanent in their nature. The first count in the complaint charges the respondent company with damages for the first assault upon the appellant by the foreman outside of the station house. The second count charges the company for the assault and beating of the appellant by the foreman and the two tramps in the waiting room after he had been robbed. The district judge charged the jury that, in order to find for the plaintiff upon the second count, they must find "that this man was absolutely a passenger of the defendant company; that the relation of

passenger and carrier existed between them at the time of the assault. There is a correlative duty existing on both the passenger and carrier: the passenger to pay, or offer to pay, his fare; if it is accepted, he then becomes a passenger; then the duty of the railroad company is to protect, by all means within their power, during his transportation, and while he remains in the station house in that character, awaiting the coming of a train, or the departure of a train, as the case may be. That relationship existing, it was the duty of the railroad company to protect him from assaults, not only from its own agents and servants, but from other persons, if within their power; more especially from their servants and agents. That correlative duty was imposed on the railroad company, if you find, I say, gentlemen, that he was a passenger at that time; and, to become a passenger, he must have paid his fare, or have offered and tendered to pay his fare." A new trial was granted upon the second count, and the plaintiff appeals from the judgment against him on the first count, and from the order granting a new trial.

We are of the opinion that when the plaintiff alighted from the train at Lower Crossing, and made his way towards the section house, for the purpose of engaging in his regular business, his relation as passenger to the respondent company had ceased, and that it no longer owed to him any duty as a passenger; that the acts of the section foreman were not within the scope of his duties or employment, and, not being suffered or permitted by the respondent company, the appellant cannot recover from the company. We do not think that the general rule which permits a passenger a reasonable time in which to depart from the company's premises after alighting from his train has any application, and therefore affirm the judgment upon this appeal upon the second count.

In support of the order granting a new trial, it is urged by respondent's counsel that a motion for a new trial is addressed to the discretion of the trial court, and that, in some particulars, the evidence being conflicting, that court should not disturb the order. It is further claimed that, in order to entitle appellant to the protection of the respondent company, he must not only have intended to become a passenger, but must also have announced such intention, and his proposition must have been accepted by or on behalf of the company. This view was adopted by the trial court, and the case submitted to the jury upon this theory, and this alone. It is quite evident from the entire record that the new trial was granted because, in the opinion of the trial judge, the appellant was not a passenger or intending passenger within the rule declared in its charge. In other words, the new trial was granted because, in the opinion of the court, the verdict was contrary to the law, and not because of any conflict in the evidence. In the view we take, we are of the opinion that it is unnecessary to determine here when or how the relation of passenger begins. We think the case turns upon another rule of law.

It appears from the record that the section house was situated in a desert country, sparsely settled, and with habitations few and far between; that the only method of transportation to and from Lower Crossing was by rail, and the station house was kept open for the reception of the public at large, as well as passengers, ordinarily, during all hours of the day. It is a matter of common knowledge, of which the court may take notice, that these railroad station houses scattered along the line of railroads in a sparsely-settled country, such as the locality here is proven to be, are thrown open for the use of the public, which, by invitation of the company, is permitted to use them at all times, before and after the arrival and depart-

ure of trains; that there was and is an implied invitation to all persons intending to avail themselves of the railroad service to enter and occupy the premises, and at any time, in the absence of reasonable regulations to the contrary, made by the company. And the offer to pay fare, or the announcement of the intention to pay fare, and the acceptance by or on behalf of the company, is not necessary to be made, by a person entering the station with such or other legitimate purpose, to entitle him to protection against violence by the company's servants. This case does not even depend upon this question. When the appellant was assaulted and beaten in the waiting room of the station, the company itself was present, in the person of the ticket agent in charge, who was its vice principal, and the injuries inflicted upon the appellant by one servant of a company, aided by strangers, in the presence of and under the very eye of the vice principal, who tamely acquiesced, and failed to exercise his authority for the protection of the appellant, were inflicted by the company itself. The agent should have protected appellant, or, at least, should have made an earnest effort to do so. *Railway Co.* v. *Hinds,* 53 Pa. St. 512; *Railroad Co.* v. *Burke,* 53 Miss. 227. We are not prepared to sanction the proposition that a man in the situation of the appellant, driven by the unprovoked and brutal violence of the company's own servants to seek the protection of its station house and waiting room in charge of its agent, has no recourse against the company for the wilful and malicious acts of its employees, under circumstances which make them the acts of the company. We think such contention is not only against public policy, but the settled rules of law. Upon the evidence, then, the verdict was clearly right, and, in our judgment, the amount was not excessive. The district judge erred in his construction of the law, and the case was submitted to the jury upon a wrong theory.

We are of the opinion from this record that the appellant is entitled to recover from the railroad company, and are not disposed, and do not find it necessary, to put him to the expense and trouble of a new trial. "Why should a verdict be set aside which is correct, because erroneous principles of law have been announced by the court? The object of a jury trial being to do justice between the parties, the annulment of the verdict, where this has been accomplished, on account of mistakes and misdirections on the part of the court, would seem akin to the criticism which censured a celebrated commander because he persisted in winning victories in violation of the rule of strategy." *Railroad Co.* v. *Burke,* 53 Miss. 227. The judgment upon the verdict as to the first count is affirmed, and the order granting a new trial as to the second count is reversed, and the original judgment upon the verdict reinstated as of April 28, 1894, the date of the original entry. As the two appeals were submitted upon practically one record, and briefed together, the costs of printing briefs and record will be taxed in the respective appeals as apportioned by the clerk.

BARTCH and KING, JJ., concur in the judgment.