E. M. ODOM v. GULF & SHIP ISLAND RAILROAD COMPANY.

[57 South. 626.]

1. RAILROADS. *Injury to Persons at Station. Duty of Agent. Pleading. Construction. Judgment. Default. Pleading to Sustain.*

A railroad owes no duty to the public to supply general peace officers for the state. The agents of public carriers are placed in its depots for the purpose of aiding and assisting in the discharge of its public duties. When a person seeks to claim protection from insult and abuse, and to hold a railroad company liable for failure to give protection, such person must prove that he was at the depot for the purpose of transacting some business with the agent in connection with the service he is to render the railroad company in discharging its duty to the public in the business in which it is engaged.

2. RAILROADS. *Injury to Persons at Station. Duty of Agent.*

In a suit against a railroad company for a failure of its station agent to protect plaintiff from insult and abuse, a declaration which does not state that plaintiff went to the depot to see the agent on any matter connected with the business of the company but simply alleges that he "went to the depot for the purpose of transacting business with the agent of defendant" fails to state a cause of action.

3. SAME.

The universal rule of pleading is that pleadings are to be construed most strongly against the pleader and no judgment by default should be rendered where the declaration wholly fails to state any cause of action.

4. RAILROADS.  *Injuries to Persons at Station.  Duty of Agent.  Code 1906, Sec. 4867.*

> Sec. 4867, Code 1906, is not intended to make the depot agent a general officer of the state. The authority conferred upon them by this section is intended for use as the agents of the railroad company, to enable them more completely to discharge the duty that rested on the railroad company, before the enactment of the statute to protect any member of the public who goes to the depot to transact railroad business.

APPEAL from the circuit court of Simpson county.

HON. W. H. HUGHES, Judge.

Suit by E. M. Odom against the Gulf & Ship Island Railroad Company. From a judgment sustaining a demurrer to the declaration, plaintiff appeals.

The declaration omitting formal parts, is as follows:

"On or about the 17th day of April, 1910, the defendant was a Mississippi corporation, doing business as a railroad company, and in the operation of its railroad it had depots up and down its line of railroad, and agents at said depots, or stations, with whom the general public would go and transact their business with the defendant. There was a depot in the town of Star, in Rankin county, Mississippi, where the plaintiff lived, and the said depot was in charge of an agent of the defendant, and under and, by the laws the said agent at Star was a conservator of the peace, and it was his duty to preserve the peace, and to protect all persons coming to the depot to transact business with the defendant from insults and abuse and attacks, especially when such persons appeal to the agent for such protection. On or about this day the plaintiff went to the depot, at Star, of the defendant, for the purpose of transacting business with the agent of the defendant, and when the plaintiff arrived at the depot the section foreman in the employ of the defendant met plaintiff at the door, and cursed, abused, maltreated, and insulted the plaintiff in the presence of the depot agent, or depot master, who was also the agent of the defendant, and while said

insults, abuse, cursing, and maltreatment was heaped
upon the plaintiff by this section foreman, plaintiff ap-
pealed to the station master, or the agent of the defend-
ant, who was in charge of the depot, for protection. The
said agent in charge of the depot stated that he would
have nothing to do with it, and refused to protect plain-
tiff from such insults, abuse, cursing, and maltreatment,
or to cause the other servant of the defendant, the sec-
tion foreman, to desist from his cursing, abusing, and
maltreating plaintiff. The plaintiff charges that the
railroad company owed the duty to the public to employ
competent servants in each and every capacity; that by
having in its employment as the section foreman a
species of moral degenerate and a drunken sot, a man
who had no regard for the rights of the general public,
who would approach the stations of his master, to trans-
act business with his master, the defendant violated the
duty that it owed to the public in having this kind of
servants in its employment. Plaintiff avers, further,
that the defendant owed to the general public the duty
to have in its employment as station masters, or depot
agents, servants competent in every particular, whose
moral courage would enable them to protect people,
coming to the depot on business, from ruffians and
drunken desperadoes, and who would protect the general
public, transacting business with the defendant, from
abuse, cursing, and insults; but the defendant violated
this duty that it owed to the general public, in having
in its employment an incompetent servant and station
master, or depot agent. Plaintiff avers, further, that it
was the duty of the depot agent of the defendant to pro-
tect him from this abuse, cursing, and maltreatment,
made so by his employment of the defendant; but the
defendant's agent or servant, and the defendant itself,
has been grossly and willfully negligent in performing
those duties that it owed this plaintiff and the general
public; and by reason of said gross and willful negli-

gence of the defendant, the plaintiff has been greatly damaged and humiliated and mistreated, to-wit, in the sum of five thousand dollars. Wherefore he brings this suit and demands judgment.''

*Hilton & Hilton* and *Flowers, Alexander & Whitfield,* for appellant.

Sec. 4867 of the Code makes it the duty of the railroad companies to keep open their stations at least an hour before the arrival and one half hour after the departure of passenger trains and to keep the station lighted when necessary, and also properly heated. And then it is provided:

''The agent or person in charge shall preserve order and, if necessary, eject any person whose conduct is boisterous or offensive.''

It is said, however, that this section was enacted for the benefit of passengers only and that there is no duty resting upon agents at stations to keep order or to protect any person in or about the station except passengers or persons who are there for the purpose of becoming passengers. In other words it is said that the agent cannot be considered a conservator of the peace in and about stations except insofar as he may have to deal with passengers or except so far as passengers, as such, may be concerned.

In *King* v. *Railroad Co.,* 69 Miss. 245 the court said:

''Every depot or station agent, whatever may be his instructions or understanding, is made a conservator of the peace with authority to preserve order in the waiting room, and the duty to arrest and deliver to some officer all persons who are guilty of disorderly conduct, etc. The manifest purpose of the legislature was to secure the preservation of order in the waiting room through the designated officer or agent of the railroad company, and what he does or fails to do, in reference to this duty, is imputable to the railroad company as its act or omission.''

We do not understand that it would have made any difference in the decision of the King case if it had appeared that King was not a passenger but was rightly on the premises of the company. The decision is not made to depend upon the fact that he was a passenger or intending passenger, and while it is said that the statute was intended to make a station agent a conservator of the peace in and about the waiting room, it certainly would not be given such limited application as to relieve the station agent of the duty to preserve order in any part of the station which was under his supervision or control nor do we think that it would be given such limited application as to afford protection to passengers only.

Passengers are entitled to the protection because they are rightly on the premises of the company. They have in a way put themselves in the hands of the company and sufficient authority is vested in the station agent to protect them. And while the passenger may be under a contractual relation with the company this could hardly be considered to do more than to establish his right to remain on the premises and depend upon the company for protection while he so rightfully remains there and properly conducts himself. But the man who goes to get freight which the company has transported for him or to deliver goods to be transported is also in a contractual relation, in a sense, with the company and his right to be on the premises and to be protected while there is established. The material inquiry is whether the person claiming the protection was rightly on the premises or necessarily there in order to transact business which he has with the company.

In *Andrews* v. *Railroad Company,* 86 Miss. 129, wherein it appeared that Andrews had gone to the station long before train time and by the courtesy of the agent was permitted to go into the agent's private office to do some writing and was there assaulted by the agent, the court said:

"We hold that every prospective passenger or other person lawfully entitled to use the reception room at a passenger station, and whose own conduct is not boisterous or offensive, is protected in such use by the provision of the section cited. But the statute cannot be so extended as to cover a difficulty of a personal nature, not growing out of or connected with the services of the employee or the business of the master, arising between two individuals not in the reception room, even though one of the parties should be an employee of the railroad company owning or controlling the depot."

But in that case it appears that there was no business of the master being transacted or about to be transacted by either of the parties. Andrews was not on the premises for any purpose except a private purpose. He was there for his own business and the company owed him no duty whatever to protect him. He was not there to transact business with the railroad company.

In *Rose* v. *L. N. & O. T. R. R. Co.,* 70 Miss. 725, the court held that the railroad company may be liable for the act of persons expelling the plaintiff from the waiting room with unnecessary violence, since it was made to appear that the agent of the defendant directed or permitted it and no reference is made in the opinion of the court or in the brief of counsel to the statute. Rose, however, seems to have been a passenger.

*B. E. Eaton* and *May & Sanders,* for appellee.

Counsel for appellant do not undertake to predicate liability against the defendant for the act of the section foreman, except insofar as the station agent failed to protect plaintiff when appealed to. In other words, it seems to be admitted by counsel for appellant that the section foreman was not acting in the scope of his duties, service and employment; and they do not insist that there would be liability, if it had not been for the failure of the station agent to protect plaintiff. In fact, counsel

for appellant cannot contend that liability is fastened on defendant by the act of the section foreman alone, since they do not contend that, at the time he was acting for the master and within the scope of his employment, and since they decline to amend their declaration so as to contain this allegation. The decisions of this court to this effect have been numerous, but we wish to cite the court to the two leading cases: *Railroad Company* v. *Latham,* 72 Miss. 32, and *Canton Warehouse Co.* v. *Pool,* 78 Miss. 147.

Counsel for appellant, however, proceed upon the theory and the assumption that the allegations in the declaration to the effect that plaintiff went to the depot to transact business with the agent of the defendant, is equivalent to the allegation that he went to the depot to transact business with the defendant and they have assumed throughout their discussion that it is alleged that plaintiff went to the depot to transact business with the defendant.

Consequently appellant's counsel maintain that they may rely upon, either statutory enactment or common law authority, to the effect that it was the duty of the agent, under such circumstances, to protect plaintiff from insult and abuse. However, throughout the declaration the complaint is that it was the duty of the agent to intervene because he was a conservator of the peace. It is not pretended in the declaration that the station agent was under any obligation to intervene except as a conservator of the peace, and he can only be a conservator of the peace by virtue of Sec. 4867, Code 1906, which confers on him that power. It cannot be contended that he is a conservator of the peace by virtue of any common law or decision.

The supreme court of Mississippi has practically decided that, but for the statutory requirement, the station agent owed no duties whatever to act as conservator of the peace.

In the case of *King* v. *Railroad Co.*, 69 Miss. 245, Chief Justice Campbell, in discussing the act of February 22, 1890, making it the duty of station agent to act as conservators of the peace, says:

"The act cited creates the power and the duty prescribed to be exercised and performed by depot or station agents, as such, and for their principles. Under the act they are neither more or less than depot or station agents, with the additional power and duties prescribed by it, to be exercised and performed for and in behalf of their employers."

This language clearly shows that the court would not have recognized any common law liability upon the railroad company for the failure of a station agent to preserve peace, even in the waiting room containing passengers. If, as stated by Judge Campbell, the act created the power to be exercised, a failure to exercise the power in the absence of the act would be impossible and would consequently create no liability upon the railroad company. The act referred to above has been brought forward and finds its present form in Sec. 4867 of the Code. If, as stated above, these agents are neither more nor less than depot or station agents with the additional powers and duties prescribed by the act to be exercised and performed for and in behalf of their employers, it obviously is not their duty, as station agents, to act as conservators of the peace, except in those particular instances where the statutes require it.

Section 4867 has reference only to reception rooms for passengers, prescribing how long they shall be kept open; prescribing how they shall be kept, and concludes with the language that: "The agent or person in charge shall preserve order, and if necessary eject any person whose conduct is boisterous or offensive."

Plainly, the duty of the agent has reference only to the subject comprehended in the section and these subjects deal solely with the conveyance, comfort and pro-

tection of the passengers. King was a passenger; was
within the passenger waiting room of the railroad com-
pany and thus came strictly within the provisions of
the act. The noticeable feature in the present law that
differs from the act of 1890, is that the act of 1890 pro-
vides that station agents shall arrest and deliver to the
custody of the most convenient sheriff or proper officer,
the offending person. The present statute does not re-
quire the station agent to make any arrests whatever,
putting as the alternative for the inability to preserve
peace, the provision that the offending person may be
ejected from the depot; consequently, the obligation
upon a station agent at present, is less binding than it
was when King was improperly arrested, and the power
given to a station agent to interfere even in proper cases
is, accordingly, more circumscribed.

If, therefore, the original act was only meant to ap-
ply to passengers, certainly the present act cannot be
made to comprehend additional persons, whether they
go to the depot to transact business with the defendant
or whether they go to the depot for personal and private
reasons. Counsel are, therefore, mistaken in stating
that the decision in the King case is not made to depend
upon the fact that King was a passenger or an intend-
ing passenger.

We also submit that counsel for appellant was mis-
taken in their assertion that the same rule that prevails
for the protection of passengers should prevail for the
protection of persons going to the depot to transact other
or different business. At most, such persons would be
nothing more than licensees invited upon the railroad
premises and no rule of law that we have found holds
a carrier liable to such persons to the same extent as it
is held liable to a passenger. If the railroad company
is liable to plaintiff, assuming that the plaintiff went to
the depot to transact business with the defendant, this
liability must arise because of the breach of some duty

owed to plaintiff as a carrier. What breach of duty is
shown in the declaration? What kind of business does
the declaration show that plaintiff went to the depot to
transact, assuming that the plaintiff went to the depot
to transact business with the defendant? Does he state
in his declaration that he went to the depot to look after
a freight transaction? Does he contend that he went
to the depot in pursuance of any business between him
and the defendant growing out of the relation of a com-
mon carrier? So far as the declaration discloses, if
plaintiff's business was intended to be a business with
defendant, it might have been for the purpose of en-
deavoring to sell the defendant merchandise; it might
have been to seek employment; it might have been to
procure the discharge of someone; it could have been
for numerous purposes which do not involve in any de-
gree the duties of a carrier, and which do not to any
extent entitle plaintiff to any extra protection offered
by the law to one transacting a business with the de-
fendant as a carrier of passengers and freight. Counsel
for appellant are not warranted in the assumption that
the plaintiff went to the depot to get freight, and they
are not entitled to discuss appellant's rights as if he had
gone there for freight. The appellant is as silent as
to the character of business he went to transact as he is
careful to state that his business was with the agent of
the defendant and not the defendant itself.

We do not understand that counsel have successfully
escaped the holding of the court in the case of *Andrews*
v. *Railroad Co.*, 86 Miss. 129. It clearly appears in this
case that the court limits the liability of a railroad com-
pany for the wrongful or tortious acts of its agent to
those persons who are in or about the depot for the pur-
pose of becoming passengers. Andrews did not go to
the depot to immediately become a passenger on the
train, and the court held that, Sec. 4313, Code 1892, had
no application to this case. Andrews was not injured

by the failure of an agent to prevent another from assaulting him, but he was injured by the direct assault by the agent himself.

If, independently of section 4867, there is any common law liability for the failure of an agent to prevent another from doing a wrong, it seems that the court would have held in the Andrews case, that the road was liable for the agent's wrongful conduct.

However, the court in discussing Sec. 4313 of the Code of 1892, which was brought forward as 4867 of the present Code, uses the following language: "That section was intended to conserve the convenience and comfort of the traveling public, first, by providing comfortable and cleanly rooms for their reception and accommodation; and, second, by protecting them from boisterous and offensive conduct from others. This section attempts to achieve the desired end by imposing it as a positive duty on all railroad companies at every passenger station to keep open, under the conditions and for the time stated therein, cleanly, warm and properly lighted rooms, and by vesting the person in charge of such rooms with necessary power as a conservator of the peace. But appellant at the time of the difficulty of which he now complains, though in fact due to his own responsible language and aggressive conduct, was not in the room so prepared, but in another part of the depot building, into which he had gone in furtherance of his personal ends, and in wilful disregard of an established rule of the appellee."

In another portion of the opinion in the *Andrews case, supra,* the court says: "nor was he at the time of the occurrence in any place prepared or intended for the accommodations of passengers."

The court seems to recognize by this remark and the remark subsequent to it, contained in the first quotation, that not only is the special duty to abide by this statute intended for a passenger, but that the passenger must at the time be in the place prepared for the accommodation

of passengers. This certainly is a reasonable require-
ment. If the law is to make a general police officer of
an agent of the railroad company and require this agent
to exercise the functions of a police officer continuously
about the station, it is perfectly apparent that the agent
could not give proper or suitable services to the master,
or attend properly to the duties of the station. Un-
doubtedly all that the law intended was, that when peo-
ple have gathered at the station as passengers, it is
proper that they should be protected against violence or
insult.

The plaintiff showed by his declaration that he never
got within the station or waiting rooms at all. He simply
states that he was met at the door. It does not appear
whether the door was a door to the waiting room, to the
agent's private office, or the door to the freight ware-
house. Neither does the declaration allege as has been
before stated, that the agent was himself within the de-
pot or waiting room, nor that the section foreman was
in the waiting room. Consequently, the plaintiff fails
to allege that the station agent was where; under the
law, he had jurisdiction to act as a conservator of the
peace. And he fails to show any circumstances under
which the agent was any more called upon to interfere
in a personal difficulty between him and the section fore-
man than any other person not an agent of the railroad
company.

Argued orally by *J. N. Flowers,* for appellant.

Argued orally by *B. E. Eaton,* for appellee.

MAYES, C. J., delivered the opinion of the court.

On the 28th of January, 1911, E. M. Odom brought a
suit against the Gulf & Ship Island Railroad Company,
in which he sought to recover five thousand dollars dam-
ages for the failure of the depot agent to protect him
from alleged abuse and maltreatment by a section fore-

man of the above railroad. It would be hardly worth while to set out .the declaration at length. We shall only set out the substance of the complaint as stated in the declaration. The declaration states that about the 17th of April, 1910, Odom went to the depot of the Gulf & Ship Island Railroad Company, located at Star, for the purpose of transacting "business with the agent of the railroad company," and, on arriving at the depot, a section foreman employed by the railroad company met him at the door, and cursed, abused, insulted, and maltreated him in the presence of the depot agent. It is alleged that Odom appealed to the station master for protection, but the station master refused to have anything to do with the affair, and refused to attempt to protect Odom from insults, abuses, etc., or to attempt to cause the section foreman to desist. The declaration then alleges that the railroad company owes the duty to the public to employ competent servants in every capacity, and that having in its employ a section foreman who was a moral degenerate and a drunken sot, having no regard for the rights of the general public resorting to the station of his master to transact business with his master, was a violation of the duty the railroad company owed the public. The declaration further alleges that the railroad company owes the duty to the public to have a station master competent in every respect, and with moral courage sufficient to enable him to protect people coming to the depot on business, from ruffians and drunken desperadoes, and that the railroad company failed in this, and was grossly and willfully negligent in performing the duties due to this plaintiff and the general public, to the plantiff's damage of five thousand dollars. The declaration shows that appellant relies for his right to recover against the railroad company on the failure of the depot agent to protect him from insult and abuse, but wholly fails to allege any facts which show that the railroad company owed appellant

any duty whatever. This declaration was demurred to on several grounds; the main one being that it stated no cause of action. The lower court sustained the demurrer and dismissed the bill, and an appeal is prosecuted from this judgment.

The railroad company is engaged in the business of public carrier, and its agents are placed in the depot for the purpose of aiding and assisting in the discharge of its public duties. When a person seeks to claim protection from insult and abuse, and to hold a railroad company liable for failure to give the protection, such person must prove that he was at the depot for the purpose of transacting some business with the agent in connection with the service he is to render the railroad company in discharging its duty to the public as a common carrier. We are not prepared to say that the liability of the railroad is any different, whether the person claiming the protection shall have gone to the depot to have dealings with the agent as a common carrier of goods or passengers, or any other service which the railroad undertakes to render the public as a common carrier. Sometimes, and in some places, the railroad company runs a telegraph office in its depot for the use of the public. If a person go to the depot to send a telegram, such person in such a case, by reason of his contractual or intended contractual relations, possibly has the same right to claim the protection of the railroad company while at its depot for this purpose, as would a person going to the depot for the purpose of transacting business with it as a common carrier of freight or passengers.

But the declaration does not state that the appellant went to the depot to see the agent on any matter connected with the business of the company. The declaration merely alleges that appellant "went to the depot for the purpose of transacting business with the agent of defendant." But what character of business? Was

it private business with the agent? Had he gone there
to procure employment? A declaration must state a
cause of action. The only duty resting upon the rail-
road company was the duty to protect when the business
which took appellant to the depot was in connection with
the business of the company. A railroad company does
not owe the duty to the public of supplying general
peace officers for the state.

The universal rule of pleading is that pleadings are
to be construed most strongly against the pleader.
*McCerrin* v. *Railroad Co.,* 72 Miss. 1013, 18 South. 420;
*Powell* v. *Stowers,* 47 Miss. 577; *Clary* v. *Lowry,* 51
Miss. 879. If appellant went to the depot to transact
business with the railroad company as a public carrier,
through its agent he should have so alleged, and stated
what the business was. Failing to do this, he failed to
state any cause of action. The facts alleged must show
a duty, and a breach of that duty, before any liability
can attach. Under the case of *Insurance Co.* v. *Keeton,*
95 Miss. 708, 49 South. 736, no judgment by default
could have been taken in this case because it wholly fails
to state any cause of action. If everything placed in
the declaration be conceded to be true, there is no lia-
bility.

Sec. 4867 of the Code of 1906 is not intended to make
the depot agent a general peace officer of the state. The
authority conferred upon them by the above section is
intended for use as the agent of the railroad company,
to enable them more completely to discharge the duty
that rested on the railroad company before the enact-
ment of the statute to protect any member of the public
who goes to the depot to transact railroad business.
The case of *King* v. *Railroad Co.,* 69 Miss. 245, 10 South.
42, is decisive of the above statement of the law. The
court, speaking through Judge Campbell, says: "We
reject the view that depot or station agents of railroad
companies are, by 'An act to amend the railroad super-

vision laws of this state,' approved February 22, 1890, made officers of the state, and its representatives in the exercise of the powers conferred, so as to relieve their principals from responsibility for their acts. The act cited creates the power and the duty prescribed to be exercised and performed by depot or station agents, as such, and for their principals. Under the act they are neither more nor less than depot or station agents, with the additional power and duty prescribed by it, to be exercised and performed for and in behalf of their employers. The language of the act excludes the theory that they are made officers, for it provides that they shall 'arrest and deliver to the custody of the most convenient sheriff or constable, or other proper officer,' etc., thus showing that the power devolved on them is to be exercised at their place of business and in their capacity as its supervisor. The act is a part of the scheme of railroad supervision by the state, and its effect in the matter now being considered is to make it the duty of railroad companies, through their depot or station agents, to preserve order in the waiting rooms in their respective stations.''

The case of *Andrews* v. *Railroad Co.*, 86 Miss. 129, 38 South. 773, is conclusive of the proposition that when a person goes to the depot on a private matter, and becomes involved in a difficulty about a private matter with the agent, the railroad company is not liable. In all the cases cited by counsel for appellant, where this court has held the railroad company liable for insult or abuse, the facts showed a duty on the part of the railroad company to protect by virtue of the actual or intended contractual relations with the railroad as a common carrier. In the case of *Rose* v. *L., N. O. & T. Ry. Co.*, 70 Miss. 725, 12 South. 825, 35 Am. St. Rep. 686, appellant was a passenger. In the case of *Krantz* v. *Railroad Co.*, 12 Utah, 104, 41 Pac. 717, 30 L. R. A. 297, appellant was a passenger, and the same is true in the

101 Miss. 42

cases of *Railroad Co.* v. *Burke*, 53 Miss. 200, 24 Am. Rep. 689, and *Railroad Co.* v. *Minor*, 69 Miss. 710, 11 South. 101, 16 L. R. A. 627.　　　　　　　　*Affirmed.*

McLean, J. (dissenting and concurring).

The reporter will set out in full the declaration in this cause. The defendant demurred to the declaration, and, the demurrer being sustained, plaintiff declined to amend, and prosecuted this appeal.

It is urgently insisted by appellee that the declaration shows that the plaintiff went to the depot, not for the purpose of transacting business with the defendant, but on private business with the agent of the defendant. It is true that the allegations of the pleadings are construed most strongly against the pleader, yet, when we examine the declaration as a whole, it is manifest that the plaintiff was at the depot for the purpose of transacting business with the defendant. Among other things the declaration alleges: "There was a depot in the town of Star, Rankin county, Mississippi, where the plaintiff lived, and the said depot was in charge of the agent of the defendant, and under and by the laws the said agent at Star was conservator of the peace, and it was his duty to preserve the peace and to protect all persons coming to the depot to transact business with the defendant. . . . On or about this day the plaintiff went to the depot, at Star, of the defendant for the purpose of transacting business with the agent of the defendant." It is not debatable but what the reasonable construction to put on this language is that the business to be transacted was not with the agent individually and on private business with the agent, but that the plaintiff went there for the purpose of transacting business with the defendant. If not, why did he say "for the purpose of transacting business. with the agent of the defendant?" The expression, "agent of the defendant," must necessarily mean in the agent's representative, and not

in his individual, capacity.  To allege that he went to transact business with the agent of the defendant is equivalent to saying that he went to transact business with the defendant through its agent.  Further, when he went to transact business with the agent of the defendant necessarily implies that he did not intend to transact business with him as principal, but with him as agent.

The insufficiency of the declaration is this:  It fails to allege the kind and nature of the business that called plaintiff to the depot.  It should specify such business as the defendant under the law is required to perform, either by statute or common law.  At first I was inclined to the opinion that the declaration under our statute was sufficient; but my brethren have convinced me otherwise, and I place my concurrence solely upon the ground that there is nothing in the declaration which discloses the particular business that called him to the depot.  It may be that this business was such as required the defendant to protect him; but plaintiff should have set out this in the declaration.  We cannot assume that he went to the depot for the purpose of transacting any particular kind of business.  The declaration does not so state, and the allegations are construed most strongly against the pleader.